UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRITTANY SNEED,

Plaintiff,

v.

Case No. 2:26-cv-31-KCD-NPM

ARROW ELECTRIC, INC.,

Defendant.

______________________________/

**ORDER**

Plaintiff Brittany Sneed brings this gender discrimination case against her former employer, Defendant Arrow Electric, Inc. (Doc. 1.) Arrow Electric now moves to dismiss the complaint for failure to state a claim (Doc. 31), and Sneed has responded in opposition (Doc. 32).[1] For the reasons below, the motion is granted in part and denied in part.

## I. Background

These are the facts taken from the complaint, which must be accepted as true at this stage. Sneed began working at Arrow Electric as a project coordinator and office manager in May 2024. She was there for three months. During that time, she was allegedly subjected to persistent workplace harassment, discrimination, and retaliation by coworkers and supervisory

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

personnel. The first instance occurred a month into the job, when a coworker became verbally aggressive after Sneed declined to approve an expense report for a personal car wash. After that, Sneed overheard coworkers making disparaging remarks about her, questioning her qualifications, and expressing hostility. The disparaging remarks were racially charged, including that Sneed was "not like other Black people," and referred to her as an "angry Black woman." Her coworkers also played music with racial slurs.

Her coworkers openly stated that Sneed did not belong, expressed a lack of respect for her, and expressed an intent to have her removed from her position. Sneed believes that these coworkers ultimately influenced Arrow Electric's decision to terminate her employment.

Sneed also claims sex discrimination. During departmental meetings, male employees routinely interrupted, spoke over her, and disregarded her authority in her managerial capacity. Sneed made multiple complaints to her direct supervisor, describing the harassment and racially charged comments, but management failed to escalate the complaints to HR or take any corrective action.

In her last month of employment, Sneed emailed a coworker about repeated tardiness and copied management. The coworker was not too pleased. He came into her office, turned her chair around, pointed a finger in her face, and yelled at her. Yet Sneed was told by HR to leave the office,

while the offending coworker faced no discipline. HR later told Sneed that "nobody is right and nobody is wrong," declined to interview witnesses, and took no disciplinary action against the offending employee.

A short while later, Arrow Electric terminated Sneed's employment. Upper management told Sneed there was "no proof" to substantiate her complaints, demonstrating that the decision-makers were aware of her complaints of race and sex discrimination. Sneed alleges that her termination happened "within days" of her formal complaints.

Sneed sues for race and sex discrimination (Counts I, II), and retaliation (Count III). (Doc. 29.) Though she does not bring a standalone claim for hostile work environment, the current complaint alleges that the "conduct created a hostile work environment" under the race discrimination claim. (*Id.* at 5.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

### A. Counts I & II – Race & Sex Discrimination

To state a race-discrimination claim under Title VII, "a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245-46 (11th Cir. 2015). "Title VII [also] prevents employers from discriminating against employees on the basis of their sex." *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 931 (11th Cir. 2017). "A plaintiff can establish a prima facie case of [sex] discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she was

discharged or otherwise subjected to adverse employment action; and (4) she was treated less favorably than a similarly situated employee outside her protected class." *New v. Darnell*, No. 1:07CV162-SPM/AK, 2008 WL 4525271, at *5 (N.D. Fla. Oct. 1, 2008). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Brown v. Sybase, Inc.*, 287 F. Supp. 2d 1330, 1339 (S.D. Fla. 2003).

Arrow Electric primarily argues that the race and sex discrimination claims fail because there are no facts pled establishing a connection between Sneed's race or sex and the decision to terminate her. The Court cannot agree.

Sneed's amended complaint, liberally construed, alleges that: (1) Sneed's coworkers made repeated racially discriminatory comments; (2) when Sneed complained to her direct supervisor about the harassment and racially charged comments, they refused to escalate the complaints to HR or take any corrective action; and (3) Sneed was terminated days later and told there was "no proof" to substantiate her complaints. (Doc. 29.) These factual allegations, taken as true, are sufficient to suggest that Sneed suffered an adverse employment action due to intentional race discrimination. *See, e.g.*, *Crawford v. Carroll*, 529 F.3d 961, 979 (11th Cir. 2008) ("Under a cat's paw theory, a non-decisionmaking employee's discriminatory animus may be imputed to a

neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct.").

For the sex discrimination claim, Sneed alleges that male coworkers interrupted her, spoke over her, disregarded her managerial authority, while similarly situated male employees were not treated in the same manner. (Doc. 29 ¶ 44.) She alleges that management was aware of the treatment, did nothing, and these coworkers influenced the decision to terminate her. (*Id.* ¶ 45.) Those facts are likewise enough.

It could be that nothing ultimately ties Arrow Electric to the discrimination Sneed allegedly endured, but at this stage, the Court accepts these allegations as true, and the claims survive.

**B. Hostile Work Environment**

Tucked in her race-discrimination count, Sneed asserts in a single sentence that Arrow Electric's "conduct created a hostile and abusive work environment." (Doc. 29 ¶ 37.) That will not do. A plaintiff cannot smuggle a hostile-work-environment claim into a broader disparate-treatment count. If Sneed intends to litigate that theory, she must give it its own standalone count. *See Riley v. CSX Transp., Inc.*, No. 3:23-CV-960, 2023 WL 5302973, at *1 (M.D. Fla. Aug. 17, 2023). But before she amends her pleading to do so, Sneed should take a hard look at Eleventh Circuit precedent. She must assess whether the conduct she alleges actually clears the high bar for a

hostile work environment. *See, e.g.*, *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1256-57 (11th Cir. 2014). “A racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice[.]” *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997)

**C. Count III – Retaliation**

Title VII prohibits employers from retaliating against employees who oppose practices that the statute makes unlawful. 42 U.S.C. § 2000e-3(a). To show actionable retaliation, Sneed must allege: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

A protected activity includes “informally voicing [discrimination] complaints to one’s superiors.” *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1353 (11th Cir. 2025). An adverse action includes termination of employment. *Selby v. Tyco Healthcare Grp., L.P.*, 301 F. App’x 908, 912 (11th Cir. 2008). And, at this stage, a causal connection “is construed broadly enough that a plaintiff need only establish that the protected activity and the [adverse] action are not completely unrelated.” *Vincent*, 152 F.4th at 1353. Thus, a “[c]lose temporal proximity between the protected activity and the adverse action may be sufficient to demonstrate that connection.” *Id.*

Sneed allegedly "made multiple complaints to her direct supervisor, describing the harassment and racially charged comments." (Doc. 29 ¶ 22.) She also claims that "[m]anagement failed to escalate these complaints to Human Resources or take any corrective action." (*Id.*) Within "days" of her formal complaints, she was terminated. (*Id.* ¶ 29.) These allegations cover all the elements needed.

Arrow Electric first argues that Sneed failed to plausibly allege a protected activity because she did not describe the "nature of her internal complaints." (Doc. 31 at 16.) According to Arrow Electric, she "does not allege that she complained to her superiors of discrimination based on a protected status, and because opposition to a derogatory remark alone does not constitute opposition to an unlawful employment practice, Plaintiff did not allege that she engaged in protected activity." (*Id.*) But that argument demands too much at the pleading stage. The complaint alleges that Sneed submitted multiple complaints to her direct supervisor regarding *discrimination* and *harassment*, which is further detailed in the factual allegations. This is protected activity under Title VII, and no further detail is needed at this point. *See, e.g.*, *Bonds v. Fulton Cnty. Sch. Dist.*, No. 1:22-CV-01470-ELR-LTW, 2022 WL 22869775, at *4 (N.D. Ga. Oct. 27, 2022).

Arrow Electric also claims that the complaint does not identify the decisionmaker who terminated her, much less that the person was aware of

her complaints. (Doc. 31 at 17.) But Sneed does not need to identify which representative made the decision to terminate her employment at this stage. Being fired only days after engaging in a protected activity is enough to infer a causal connection. *See McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986).

## IV. Conclusion

For these reasons, Defendant Arrow Electric, Inc.'s Motion to Dismiss (Doc. 31) is **GRANTED IN PART AND DENIED IN PART**. The hostile work environment claim fails, and Sneed is given fourteen days to file an amended complaint properly pleading that claim if she chooses after reviewing the relevant case law. If no new complaint is filed by that deadline, Arrow Electric must answer the remaining claims of the existing complaint.

**ORDERED** in Fort Myers, Florida on August 17, 2026.

Kyle C. Dudek
United States District Judge